Theodore Loos and Beatrice Loos v. Commissioner.
Loos v. Commissioner
Docket No. 5030-65.
United States Tax Court
T.C. Memo 1967-37; 1967 Tax Ct. Memo LEXIS 223; 26 T.C.M. (CCH) 183; T.C.M. (RIA) 67037; February 28, 1967
*223 Theodore Loos, pro se, 88-73 193rd St., Hollis, N. Y. Lawrence J. Shongut, Robert M. Pearl, and John J. Madden, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1963 in the amount of $409.90. One of the issues raised by the pleadings has been conceded by respondent, leaving for our decision the following: 1. Whether petitioners are entitled to deductions as business expenses of amounts claimed as cost of maintaining and operating an automobile and as cost of telephone calls in amounts in excess of the amounts allowed by respondent. 2. Whether petitioners are entitled to deduct as a business expense any amount of entertaining expense, and if so the amount of such deduction to which they are entitled. 3. Whether petitioners are entitled to a deduction of amounts claimed as charitable contributions in excess of the amount of such deduction allowed by respondent. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in Hollis, Long Island, New York at the date of the filing *224 of the petition in this case, filed a joint Federal income tax return for the calendar year 1963 with the district director of internal revenue, Brooklyn, New York. Theodore Loos (hereinafter referred to as petitioner) was an organizer with the United Motormen's Division of Local 100 of the Transport Workers Union throughout the calendar year 1963. Prior to August 1958 petitioner had been president of the Motormen's Benevolent Association. In August 1958 to Motormen's Benevolent Association merged with the Transport Workers Union and at that time petitioner was offered and accepted the position of organizer for the Transport Workers Union, representing the United Motormen's Division. At the time petitioner accepted the position of organizer with the Transport Workers Union the president of the union explained to him that he would receive a salary of $151 per week which would include $35 per week for expenses. Between 1958 and 1963 his weekly salary was increased, but the portion allowed for expenses remained at $35 a week. On his Federal income tax return for the calendar year 1963, petitioner reported the $35 expense allowance as income. The Transit Authority had an "open shop" *225 represented by the Transport Workers Union. As an organizer petitioner not only solicited new members for the Transport Workers Union but also represented men at hearings in matters concerning their compensation or physical disqualification. He also was required in his work to attend chairmen and stewards meetings. These meetings were usually luncheon meetings. During 1963 he attended such meetings six times a month. Petitioner's work required that he call at three or four or more terminals each day to visit with the motormen and conductors when they were off duty to advise them of union activities, to solicit new members for the union, and to encourage union members to assist in soliciting new union members. Petitioner keeps in touch with the union office by telephoning the office four to five times a day and receiving messages. Often when he calls there will be two to three numbers left for him to call and he will make the calls. Most of the calls petitioner makes are 10 cents each but some are a little more. He usually makes the calls from a "pay station" telephone. Occasionally he calls another terminal at no charge on the telephone in the office of the terminal he is visiting. *226 Sometimes when petitioner calls the union office there will be a report of an accident at which it is desirable to have a union representative present and petitioner will have to hurry to the location of the accident. Petitioner has a free pass on the subway but he generally uses his personal automobile in his work as the use of an automobile enables him to make more visits in one day and also to get to certain locations in less time. Sometimes, even if he has his automobile with him, he will take a taxi to a place where his services are urgently needed. Petitioner drives his personal automobile on the average of 25 miles a day in connection with his employment on the day when he drives. During the entire year 1963 petitioner's automobile was a 1960 Ford. He drove this car a total of approximately 11,000 miles in 1963. During 1963 at each terminal where he stopped each day to visit with motormen and conductors, petitioner would join these men in a restaurant in the terminal building and would buy them coffee and cake or similar light refreshments. These purchases would amount to $1.25 to $1.70 at each terminal. When he accepted his employment, he understood that he was allowed *227 the $35 a week expense money because he was expected to pick up checks for coffee and light refreshments for union members and nonmembers who were being solicited for membership in order to create goodwill for the union. He also understood that the $35 a week was to defray his telephone expenses and the expense of luncheons for some of the chairmen or stewards when he attended meetings with them and to reimburse him for an occasional dinner when he worked longer than an 8-hour day. During 1963 when petitioner attended chairmen or stewards meetings, he would spend from $3 to $10 in purchasing luncheons for some of the chairmen or stewards. He rarely spent as much as $10 but often spent as much as $5. Petitioner took 5 weeks vacation in 1963. During the 47 weeks he worked in 1963 petitioner generally worked only 5 days a week. He generally did not work on legal holidays or on Saturdays and Sundays but on occasions during 1963 did work on these days. Petitioner kept a diary during 1963 in which he would note the amounts he expended for refreshments for motormen and conductors and luncheons for chairmen and stewards and for such items as telephone calls and taxi fares. He kept this *228 diary in a briefcase in which he also kept certain receipts for parking fees, gasoline purchases, and similar items. In late 1963 the briefcase containing this information was stolen from his automobile and he has never receovered the stolen papers. On his income tax return for 1963 petitioner included in his claimed deductions the amount of $70 for taxi fares, $68.42 for automobile insurance, and $77.57 for automobile repairs. No part of these claimed deductions was disallowed by respondent. Petitioner also included in his claimed deductions $680 for "gas, oil, lubrication, tolls, parking, meters, fees, etc.," of which respondent disallowed $284.13, and $301.28 for depreciation on his automobile of which respondent disallowed $194.79. Petitioner included in his claimed deductions an item designated as "food, meals, gratuities" (entertaining expense) of $880 and respondent disallowed in full this claimed deduction. Petitioner also included in his claimed deductions an amount of $490 designated as "contributions" and respondent disallowed $440 of this claimed deduction. Ultimate Facts Petitioner has failed to show error in respondent's disallowance in part of his claimed deductions *229 for automobile expenses and depreciation, for telephone expense, and for contributions for the year 1963. Petitioner during the year 1963 expended at least $880 for ordinary and necessary business entertainment and is entitled to a deduction in this amount as a business expense. Opinion The issues here are purely factual. Because of loss of his records the deductions claimed by petitioner on his returns were estimates. His testimony was likewise based on estimates. Accepting petitioner's estimate that he drove his automobile on an average of 25 miles each day when he drove to his various working locations and that he drove most days but not every day, we do not consider the evidence sufficient to show that the amount of automobile expenses which respondent allowed are not adequate. Petitioner worked 47 weeks in 1963 and if he had driven 25 miles a day 5 days a week each of these weeks, his total mileage would have been only 5,875. By his own testimony he did not drive every day. If we assume petitioner drove approximately 5,000 miles for business reasons in 1963 respondent's allowance for gas, oil, parking and tolls amounts to approximately 8 cents a mile, his allowance for depreciation *230 a little over 2 cents a mile, and his allowance for automobile insurance and repairs amounts to a little less than 3 cents a mile. There is certainly nothing in petitioner's estimates to show these allowances to be inadequate for the mileage he estimated he drove for business purposes even making allowances for tolls and parking. Respondent's allowance for telephone calls amounts to approximately $5.10 a week for 47 weeks. Petitioner testified that most of the calls he made were 10-cent calls. In effect, therefore, respondent has allowed petitioner 10 calls a day for 5 days a week. Petitioner testified that he did not work 5 days every week since some weeks contained holidays on which he did not work, that he occasionally made calls from the terminal office without charge, and that he called the union office four to five times a day and often received two or three numbers of persons to whom he returned calls. This general testimony is insufficient to show a telephone expense in excess of the amount allowed by respondent. Petitioner estimated that he spent $1.25 to $1.70 at least three or four times each day he worked in 1963 for refreshments for motormen and conductors and at least *231 $18 a month for lunches for chairmen and stewards. His employer expected him to make these expenditures in carrying out the duties of his position. One of the reasons for his expense allowance of $35 a week was to provide funds for petitioner to use to purchase refreshments for motormen and conductors. If we take an average of $3.50 per day or $17.50 for a 5-day week for petitioner's expenditures for refreshments for motormen and conductors, which the evidence supports as a minimum expenditure on the average, the total amount for 47 weeks is $822.50 or only $57.50 less than petitioner's total claimed expenditures for entertainment. When this amount is added to $18 per month for 11 months for expenses of lunches for chairmen and stewards, another item petitioner was required by his employer to spend, the total exceeds petitioner's claimed deduction of $880. We therefore hold that petitioner is entitled to deduct $880 as a business expense for entertainment. Petitioner offered no evidence with respect to his contributions. Because of petitioner's failure of proof we sustain respondent's disallowance of $440 of this claimed deduction. Decision will be entered under Rule 50.